IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **LILLIAM IVETTE LABOY-SALICRUP;** | * | |
| **ALEXANDRA ALFARO-LABOY;** | * | Case No. **15-2112 (GAG)** |
| **ADRIANA MICHELLE LARREGUI-LABOY.** | * | |
| | * | Re: |
| Plaintiffs | * | |
| | * | Willful Violations and Damages |
| vs. | * | |
| | * | |
| **PUERTO RICO ELECTRIC POWER** | * | Jury Trial Demanded |
| **AUTHORITY; ACE INSURANCE COMPANY;** | * | |
| **ABC INSURANCE COMPANY;** | * | |
| **XYZ COMPANY; JOHN & JANE DOE.** | * | |
| | * | |
| Defendants | * | |

_____

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**TO THE HONORABLE COURT:**

    **Come now** the Plaintiffs Liliam Ivette Laboy-Salicrup, Alexandra Alfaro-Laboy, and Adriana Michelle Larregui-Laboy, represented by the undersigned counsel, and file their "Plaintiffs' Motion For Partial Summary Judgment," and would respectfully show unto this Honorable Court the following:

### I.   SUMMARY JUDGMENT STANDARD

1. Federal Rule of Civil Procedure 56 (a) provides that: "*A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought*." The Court may grant the movant's motion for summary judgment only when "*the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law*." Fed. R. Civ. P. 56(a); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28 (1st Cir.1994). "*The principal*

*judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists.*" 10A
Wright, Miller & Kane, Federal Practice and Procedure: Civil, 3d § 2725, p. 401.

2.  In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "*genuine*,"
    there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in
    favor of the non-moving party. U.S. v. One Parcel of Real Property, 960 F.2d 200, 204 (1st
    Cir.1992); See also Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 24 (1st Cir.1989);
    Medina-Muñoz v. R.J. Reynolds Tobacco, 896 F.2d 5, 8 (1st Cir.1990) "*A 'genuine' issue is
    one that must be decided at trial because the evidence, viewed in the light most favorable to
    the nonmovant, would permit a rational fact-finder to resolve the issue in favor of either
    party.*" (Citations Omitted).

3.  Similarly, "*material*" means that the fact is one that might affect the outcome of the suit
    under the governing law. Morris v. Government Development Bank of Puerto Rico, 27 F.3d
    746, 748 (1st Cir.1994). "*A fact is material if it tends to resolve any of the issues that have
    been properly raised by the parties.*" 10A Wright, Miller & Kane, supra, § 2725 at p. 419.
    "*Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the
    potential to change the outcome of the suit under the governing law if found favorably to the
    nonmovant that the materiality hurdle is cleared.*" Martínez v. Colón, 54 F.3d 980, 983-984
    (1st Cir.1995).

4.  In addition, when determining whether to grant summary judgment, the Court should not
    weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d
    668 (1st Cir.1994). Summary judgment "*admits of no room for credibility determinations, no
    room for the measured weighing of conflicting evidence such as the trial process entails.*" Id.
    (citing Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st

Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

5. While the moving party has the burden of initially establishing that there is "*an absence of evidence to support the nonmoving party's case*," Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir.1994), the nonmovant can meet its burden by offering the Court some evidence that defeats the moving party's summary judgment motion. Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1st Cir.1996).

6. The role of the Court or Judge in a summary judgment proceeding is to make the "*threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.*" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If this inquiry reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, judgment should be entered in his favor. Fed. R. Civ. P. 56 (a).

7. The issue brought before this Honorable Court in the present motion is one of a purely legal nature (matter of law), which does not require the celebration of a trial in order to be decided. Therefore, the mechanism provided by Rule 56 of Federal Civil Procedure is apt for our purpose.

8. **Is the Puerto Rico Electric Power Authority ("PREPA") immune from the present complaint or do PREPA's actions fall under the "*intentional*" exception to the immunity provided by law?** In the interest of pretrial procedural economy, the Plaintiffs respectfully bring forth the present request of partial summary judgment at this stage of the proceedings

in order to have the Court's decision over this matter.

9. "*The summary judgment mechanism contemplated by Fed.R.Civ.P. 56 is used to avoid a useless trial. It is a procedural device that makes possible the prompt disposition of controversies without a trial if in essence there is no real dispute as to the salient facts. Rule 56, seen in light of a qualified-immunity defense under <u>Harlow</u>* [Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)] *and <u>De Abadía</u>* [De Abadía v. Izquierdo Mora, 792 F.2d 1187 (1st Cir. 1986)]*, serves two purposes. The first purpose is of pretrial procedural economy. As stated in <u>De Abadía</u>, 792 F.2d at 1189, citing from <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), qualified immunity is more than immunity from money damages; it is 'an immunity from suit ... which is effectively lost if a case is erroneously permitted to go to trial.'* " <u>Echevarria v. Gracia Anselmi</u>, 642 F. Supp. 843 (D. Puerto Rico 1986).

10. "<u>*Harlow*</u> *specifically holds that the issue of qualified immunity is properly raised as part of the defendant's affirmative defenses incorporated as part of that party's responsive pleading. <u>Harlow</u>, 457 U.S. at 815, 102 S.Ct. at 2736. Of course, <u>Harlow</u> and <u>Mitchell</u>, followed by <u>De Abadía</u>, encourage the parties to obtain a pretrial determination on the issue if the particular circumstances of the case allow framing the defense in the context of a motion for summary judgment. <u>Harlow</u>, 457 U.S. at 816-21, 102 S.Ct. at 2737-40; <u>De Abadía</u>, 792 F.2d at 1188-1190.*" <u>Echevarria v. Gracia Anselmi</u>, supra.

11. As expressed by the aforementioned jurisprudence, and acknowledged by the U.S. District Court for the District of Puerto Rico, controversies of which there exists no real dispute as to the facts, can and should be determined by the Court as soon as possible, in order to relieve the parties (and the Court) from incurring unnecessary expenses and litigation. Thus,

upholding the procedural economy principle.

12. The procedural economy principle is also found in found in local Rule 1 of Civil Procedure, which states the following: "*The leading principle of the Rules of Civil Procedure is that all proceedings should be resolved in the most fair, speedy and economical manner possible.*" (Translated From Spanish) Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Ap. V, R. 1.

13. It is the Plaintiffs' position that the issue of whether Defendant PREPA is immune from the present complaint or that it falls under the "*intentional*" exception to the immunity provided by Puerto Rico's Workmen's Compensation Act, 11 L.P.R.A. sects. 1 et seq. ("PRWCA"), has ripened and is mature for summary disposition.

14. For Plaintiffs to prevail on this motion for partial summary judgment, we must simply bring forward evidence that demonstrates: (a) that Defendant PREPA's conduct was willful/intentional; and, (b) that this "***willful***" conduct exempts PREPA from its statutory immunity under Puerto Rico's workmen's compensation laws. The Plaintiffs' contend that a partial summary judgment proceeds in this case, based on the factual and legal finds that are exposed in the following sections.

## II.  STATEMENT OF FACTS

15. The incident ("Subject Incident") which is the basis of this lawsuit occurred during the day of November 13, 2014, while Hector Laboy-Salicrup ("Hector") was working on an electric tower, located near Road PR-156, Rio Hondo II, Sector La Guitarra, in the town of Comerio, Puerto Rico.

16. At the time of his death, Hector was a regular employee of PREPA, which he had been for approximately twenty (20) years.

17. Hector was Plaintiff Lilliam Laboy-Salicrup's brother, Plaintiff Alexandra Alfaro-Laboy's uncle, and Plaintiff Adriana Michelle Laguerri-Laboy's uncle.

18. On the morning of November 13, 2014, Hector was sent by his supervisor to the Subject Area in order to work on an electric tower, approximately 80 feet high. Hector was at the top of the tower when it collapsed, causing Hector to die from his injuries.

19. The electric tower that collapsed was a lattice structure that was sustained by four tension cables, which provided the structure with support and stability. A few days before the Subject Incident, PREPA had removed two or the four tension cables, causing the tower to become unstable, certain to fall or sway.

20. When employees of PREPA finished the work on November 10, 2014, they were instructed by their superior not to reconnect the two tension cables that had been removed.

21. Before starting the job on November 13, 2014, in direct contravention to pertinent laws and regulations, PREPA's Management intentionally did not inspect the work area, including the electric tower that was missing half of its stabilizing cables.

22. The Puerto Rico Police Department investigated the Subject Incident the day it occurred and rendered a report. No formal criminal charges were filed, as a result of the subject incident.

23. Officials of the Occupational Safety and Health Administration ("OSHA") carried out a separate investigation and as result of this investigation, PREPA was found to have committed six violations to the Puerto Rico Occupational Safety and Health Act (Act No. 16 of August 5, 1975, as amended).

24. After an Informal Conference was celebrated on May 5, 2015, OSHA's findings resulted in the following six violations:

a. 29 CFR1926.21(b)(2): The employer did not instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his/her environment to control or eliminate any hazards or other exposure to illness or injury.

    i. For this Serious violation, PREPA was issued a $2,000.00 fine.

b. 29 CFR 1910.269(a)(2)(i): Employees were not trained in nor were they familiar with the safety-related work practices, safety procedures, and other safety requirements that pertained to their respective job assignments.

    i. For this Serious violation, PREPA was issued a $2,000.00 fine.

c. 29 CFR 1910.269(a)(3): The employer did not determine existing conditions related to the safety of the work to be performed before work on or near electric lines or equipment was started.

    i. For this Serious violation, PREPA was issued a $7,000.00 fine.

d. 29 CFR 1926.950(b)(1): Existing conditions shall be determined before starting work, by and inspection or a test Such conditions shall include but not be limited to energized lines and equipment conditions of poles and the location of circuits and equipment including power and communication lines CATV and fire alarm circuits.

    i. For this **Willful-Serious** violation, PREPA was issued a $70,000.00 fine.

e. 2 OSH 1904.29(b)(1): A log of all recordable work-related injuries and illnesses (OSHO Form 300 or equivalent), was not completed in the detail as required by the regulation.

    i. For this Other-Than-Serious violation, PREPA was not issued a fine.

      f.  29 CFR 1904.30(a): A Log of all Work-Related Injuries and Illnesses (OSHO Form 300) and or the Summary of Work-Related Injuries and Illnesses (OSHO Form 300A) and or the Injury and Illness Incident Report (OSHO Form 301) or equivalent forms were not kept separate for each establishment.

          i.  For this Other-Than-Serious violation, PREPA was not issued a fine.

25. The above stated violations resulting from the OSHA Inspection 1008506, Report ID 0257220, were not contested by PREPA, nor were OSHA's findings. Instead, PREPA entered into an agreement with OSHA to lessen the quantity of the fines imposed. The results of OSHA's investigation are final.

26. Section 17(e) of the Occupational Safety and Health Act of 1970 ("Act") clearly expresses that a "***willful***" violation that resulted in the death of an employee, like the one committed by PREPA in the case at hand, would require the implementation of a maximum fine of ten thousand dollars ($10,000.00), if it is the first offense. It the case at hand, the fine implemented was in the amount of seventy thousand dollars ($70,000.00); seven times the statutory maximum for a first offense. PREPA's conduct, as determined by OSHA, was willful and unlawful.

27. Defendant PREPA's contentions, applicable to the matter at hand, as expressed in its Affirmative Defenses, <u>Answer To The Amended Complaint</u>, are the following:

      a.  PREPA has immunity as a direct employer pursuant to Puerto Rico's Workmen's Compensation Act.

      b.  PREPA complied with all applicable regulations for the work being performed.

      c.  PREPA is a covered employer pursuant to the Puerto Rico Workmen's Compensation Act.

d. The Puerto Rico Workmen's Compensation Act grants PREPA complete immunity from the allegations in the Amended Complaint given that the incident alleged is a work related accident. Thus, there is no cause of action against PREPA.

e. The Complaint fails to allege the specific intentional requisite necessary to prevent the applicability of the immunity provided by the Puerto Rico Workmen's Compensation Act.

f. The complaint fails to state specific acts attributable to Defendants which amount to the requisite intention necessary to impede the immunity provided by the Puerto Rico Workmen's Compensation Act.

28. Co-defendant ACE's contentions, applicable to the matter at hand, as expressed in its Affirmative Defenses, <u>Amended Answer To The Amended Complaint</u>, are the following:

a. PREPA is an insured employer under the State Insurance Fund Act, which grants PREPA complete immunity from the allegations in the Amended Complaint, meaning that there is, and can never be, a cause of action against PREPA or against ACE because of the work related accident alleged in the Amended Complaint.

b. Plaintiffs are barred from seeking any remedies against PREPA or ACE in accordance with the State Insurance Fund Act dispositions.

c. The dispositions of the State Insurance Fund Act apply to the incident alleged in the Amended Complaint.

d. The failure alone of an insured employer to follow the legal obligation to maintain safe conditions at work does not authorize any cause of action in favor of the

employee nor does it affect the employer's immunity under the law. <u>Hernandez Sanchez v. Bermudez Longo</u>, 149 D.P.R. 543 (1999).

29. The Plaintiffs' contention, as opposed to the Defendants, is that PREPA's conduct that resulted in the death of Hector Laboy, meets the statutory requisites necessary to prevent the applicability of the immunity provided by the Puerto Rico Workmen's Compensation Act. Thus, making the Defendants liable and responsible for the Plaintiffs' damages, as claimed in the Amended Complaint.

### III. APPLICABLE LAW

30. The Puerto Rico Workmen's Compensation Act establishes a compulsory insurance scheme whose purpose is to provide workers who suffer an injury or illness in the course of his/her work and as a result thereof, a quick and efficient remedy, free from the complexities of an ordinary judicial claim for damages. <u>Soc. de Gananciales v. Royal Bank de P.R.</u>, 145 D.P.R. 178 (1998); <u>Catala Melendez v. Soto Rios</u>, 99 T.S.P.R. 56.

31. Under PRWCA, an employee's remedy for a work related injury against the direct employer and "*statutory employer*" is limited to a claim through the State Insurance Fund. 11 L.P.R.A., sects. 20 et seq.

32. The State Insurance Fund, created by the PRWCA, represents the exclusive fund created and administered by the State, with the sole purpose of providing a speedy and efficient service and compensation to the insured and injured worker.

33. Under the PRWCA, employees waive any potential claims against their employers and the law confers absolute immunity to employers who insure their workmen. 11 P.R. Laws Ann. § 21. Although certain exceptions exist.

34. The Supreme Court of Puerto Rico has recognized that there are exceptions to the absolute immunity doctrine established in the PRWCA, one of them being accidents that are caused by intentional or discriminatory acts by the insured employer. In these types of situations, a civil torts claim is allowed in order to receive compensation for the damages caused by the employer's intentional or discriminatory actions. <u>Soc. de Gananciales v. Royal de P.R.</u>, 145 D.P.R. 178 (1998); <u>Odriozola v. Superior Cosmetic Distributors Corp.</u>, 116 D.P.R. 485 (1985).

35. The jurisprudence relating to this issue has concluded that the aforementioned exception to the immunity doctrine does not apply to actions or omissions of gross negligence by the insured employer. In cases of gross negligence, the only available remedy is the one provided by the PRWCA and the State Insurance Fund. <u>Guzmán Cotto v. Estado Libre Asociado de Puerto Rico</u>, 156 DPR 693 (2002)<u>, 2002 TSPR 59</u>; <u>Hernández Sánchez v. Bermúdez & Longo, S.E.</u>, 149 D.P.R. 543 (1999); <u>Admor, FSE v. Flores Hermanos Cement Products, Inc.</u>, 107 D.P.R. 789 (1978).

36. In other words, the real problem stems from differentiating what constitutes an intentional act as opposed to grossly negligent conduct. In the case at hand, the controversy revolves around the cause of Hector's death. Was it caused by PREPA's grossly negligent behavior or was it caused by an intentional act of PREPA?

37. The Supreme Court of Puerto Rico has repeatedly concluded that the main factor to be analyzed in this type of determination is the intent of the employer. The immunity exception applies if the accident was the result of the employer's intent to produce such result. If the element of intent is missing, the exception does not apply. <u>Hernández Sánchez v. Bermúdez & Longo, S.E.</u>, supra; <u>Admor, FSE v. Flores Hermanos Cement Products, Inc.</u>, supra.

38. In the case at hand, it is the Plaintiffs' contention that PREPA possessed the necessary intent to cause the Subject Incident, in order for the exception to the immunity doctrine to be successfully applied. Furthermore, it is also the Plaintiffs' contention that OSHA's investigation of the Subject Incident serves as substantive evidence of PREPA's intent. More on the subject will be discussed in the following section.

39. The Occupational Safety and Health Act was created in 1970 for the purpose of assuring safe and healthful working conditions for working men and women. This purpose is carried out by authorizing enforcement of the standards developed under the Act and by assisting and encouraging the States in their efforts to assure safe and healthful working conditions. The purpose of the Act is not to condone or excuse willful or intentional violations of an insured employer.

40. In Carmen Lydia Nieves Roman v. International Shipping Agency, Inc., 2010 PR App. Lexis 3327, Puerto Rico's Appellate Court expressed the following: "*The Occupational Health and Safety Act of 1970 was created by the Congress of the United States as the administrative agency specialized in guarantying secure and healthy conditions for all workers.*" (Translated From Spanish)

41. Puerto Rico's Supreme Court has repeatedly stated that decisions made by administrative agencies are presumed correct. Otero v. Toyota, 163 D.P.R. 716 (2005); Pacheco v. Estancias, 160 D.P.R. 409 (2003). The reason for the aforementioned presumption is that the determinations made by these administrative agencies are made towards matters within their specialty and expertise. Rivera Concepcion v. ARPE, 152 D.P.R. 116 (2000); Fac. C. Aplicadas, Inc. v. CES, 133 D.P.R. 521 (1993).

42. The deference that tribunals should give to administrative determinations is brought on by the knowledge that it is the administrative agencies that are in the best position to make these determinations, since it is the administrative agencies that possess the expertise and experience over the matter. <u>Metropolitana S. E. v. ARPE</u>, 138 D.P.R. 200 (1995); <u>Gallardo v. Clavell</u>, 131 D.P.R. 275 (1992).

43. In the case at hand, OSHA's official determination, as consequence of PREPA's conduct on the Subject Incident and as concluded from the administrative investigation, was that PREPA incurred in a "***willful***" violation and because of such "***willful***" violation a seventy thousand dollar ($70,000.00) fine was imposed.

44. The OSHA Field Inspection Reference Manual provides the following definitions: "***Willful Violations****. The following definitions and procedures apply whenever the CSHO suspects that a willful violation may exist: (1) A willful violation exists under the Act where the evidence shows either an intentional violation of the Act or plain indifference to its requirements. (a) The employer committed an intentional and knowing violation if: **1**. An employer representative was aware of the requirements of the Act, or the existence of an applicable standard or regulation, and was also aware of a condition or practice in violation of those requirements, and did not abate the hazard. **2**. An employer representative was not aware of the requirements of the Act or standards, but was aware of a comparable legal requirement (e.g., state or local law) and was also aware of a condition or practice in violation of that requirement, and did not abate the hazard*." Chapter III § C.2.d.(1)(a), Field Inspection Reference Manual, OSHA.

45. In regards to **Criminal/Willful** violations, the Act provides that: "*Any employer who willfully violates any standard, rule or order promulgated pursuant to Section 6 of this Act, or of any*

*regulations prescribed pursuant to this Act, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be a fine of not more than $20,000 or by imprisonment for not more than one year, or by both*." Occupational Safety and Health Act of 1970, Sec. 17(e), 29 USC 666.

46. In <u>United States v. Dye Construction</u>, 510 F.2d 78, the only case to address the issue of what constitutes "*willfulness*" for the purpose of finding a criminal violation, the court concluded that Section 666(e) of the Act does not require that the government prove that the employer entertained a specific intent to harm the employee or that the employer's action involved moral turpitude. In the aforementioned case, the court approved the following jury instruction: "*The failure to comply with a safety standard under the Occupational Safety Health Act is willful if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally.*" <u>United States v. Dye Construction</u>, supra.

47. The aforementioned definition (jury instruction) of "*willfulness*" has been widely adopted by the Circuits in the context of OSHA civil enforcement. See <u>Valdak Corp. v. OSHRC</u>, 73 F.3d 1466 (8th Cir. 1996); <u>Ensign Beckford Co., v. OSHRC</u>, 717 F.2d 1419, 1422 (D.C Cir. 1983).

48. In other words, a violation is considered willful or intentional for criminal purposes, not only if the employer knows of a safety standard and decides to disobey or it; but also if an employer intentionally disregards the safety standard or simply does not care of its existence.

49. "*Ignorance of the applicable standard is not a defense, where intentional disregard or plain indifference to the requirements of the law can be shown. For example, a company may not fail to make its supervisors on the job site aware of OSHA regulations, then plead ignorance when caught in a violation.*" Georgia Electric Co. v. Marshall, 595 F.2d at 320. Such conduct itself shows plain indifference to the requirements of the law.

50. In regards to the subject of immunity (applicable to absolute immunity), the Supreme Court of the United States has stated the following: "*By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.*" Harlow v. Fitzgerald, 457 U. S. at 819, 102 S.Ct. at 2738.

51. In other words, the law (federal and/or state) is not created, nor is it meant to be enforced as a way to protect lawless conduct. In the case at hand, PREPA's conduct was lawless and therefore, the immunity provided by the Act should not be applied.

52. For the reasons stated in the following section of the present document, it is the Plaintiffs' contention that PREPA's conduct during the Subject Incident meets the necessary "***intentional***" requirement, as stated by law, to trigger the employer immunity exception.

### IV. BRIEF IN SUPPORT

53. With respect to PREPA, a utility company in Puerto Rico, the Supreme Court of Puerto Rico has repeatedly recognized that PREPA, as an entity that produces and distributes electricity,

has the duty to exercise the highest degree of care, due to the dangerous nature of the product that it markets. <u>Torres Solís v. A.E.E.</u>, 136 D.P.R. 302, 310 (1994); <u>Méndez Purcell v. A.F.F.</u>, 110 D.P.R. 130, 134 (1980); <u>Burgos Quiñones v. A.F.F.</u>, 90 D.P.R. 613, 619 (1964); <u>Ramos v. A.F.F.</u>, 86 D.P.R. 603, 609 (1962).

54. In fact, PREPA's elevated duty of care covers everything from the initial installation to the ongoing required maintenance of its equipment, as well as the operation of its power generating plants and facilities. <u>Ramos v. A.F.F.</u>, supra. Moreover, the Supreme Court has imposed on PREPA a duty to carry out adequate and routine inspections of its electrical units and equipment in order to discover and detect hazardous defects and dangerous conditions that could place the public's safety in jeopardy, as well as PREPA employees.

55. As Judge Salvador E. Casellas discussed in the case of <u>Martinez de Jesus v. Puerto Rico Electric Power Authority</u>, 256 F. Supp. 2d 122, 125 (D. Puerto Rico 2003), the Puerto Rico Supreme Court has imposed a continuing and heightened duty of care on PREPA in light of the dangerous nature of its business and the harm that can be caused by its electricity. This duty of care encompasses the public, as well as PREPA employees.

56. The logic for imposing an elevated duty on Defendant PREPA relates to the dangerous and hazardous industry through which it profits: the transmission and distribution of electricity. Because Defendant PREPA is the sole provider of electricity on the island, it possesses unique and specialized knowledge relating to the safe transmission and distribution of its electricity. In light of this knowledge and unique position, it is required to comply with a more rigorous and elevated duty of care. See <u>Martinez de Jesus v. Puerto Rico Electric Power Authority</u>, supra.

57. In light of PREPA's clear breach of duty in the case at hand, the intentional actions and/or omissions during the Subject Incident caused the damages claimed in the Amended Complaint. PREPA's intentional conduct, as stated in the OSHA Report, and corroborated with the definitions provided by Occupational Safety and Health (Section 17(e)), in regards to "*willful*" and "*criminal*," is to be considered enough to meet the immunity exception requirement.

58. No PREPA employee was criminally charged as consequence of Hector's death, but the fact still remains that PREPA's conduct was criminally punishable. The reasons for not presenting criminal charges against PREPA are not important in this stage of the process; what is important in order to establish the necessary intention is that the conduct was and criminally punishable.

59. It is a fact not in controversy that Hector's death occurred in the course of his workday as a PREPA employee. Specifically, Hector had been assigned to work on the top of an 80-foot electric tower, which has two of its four tension cables missing. It is a fact not in controversy that removing two out of four tension cables made the tower unstable and **certain** to sway or fall. It is a fact not in controversy that PREPA personnel removed these two tension cables **intentionally**, as well as it is not in controversy that PREPA personnel intentionally did not reconnect the cables removed. Thus, **intentionally** creating the unnecessary dangerous situation and showing the intent to cause harm.

60. PREPA's intentional action was the proximate and direct and only cause for the Subject Incident. PREPA's conduct cannot be reasonably considered a mere error in judgment or a simple violation of security protocol. It is an undeniable fact that PREPA personnel intentionally removed the cables, intentionally did not reconnect them, intentionally created

the dangerous situation, intentionally did not carry out the necessary site inspection before commencing the workday, and intentionally caused the accident.

61. The "*intent*" requirement, as explained by the Supreme Court of Puerto Rico, does not entail a specific interest in a specific result; for the immunity exception to prosper the non-specific intent of causing an "***incident***" is enough. In other words, for the immunity exception to progress it is not necessary to prove that PREPA wanted or intended for Hector (or any employee) to die. In no way are the Plaintiffs suggesting that PREPA intentionally caused Hector's death. But the Plaintiffs are suggesting that PREPA's intent was for an accident to occur. As concluded by the Supreme Court, this criminally punishable, non-specific intent is enough to bar the employer from the immunity protection.

62. To name one of the possible criminally punishable actions that PREPA was liable for, Article 94 of the Penal Code of Puerto Rico, 2012 L.P.R. 146, codifies the crime of "*Negligent Homicide,*" in its pertinent part, as follows*: "Every person that causes the death of another due to negligence will incur in a misdemeanor, but a fixed three (3) year confinement sentence will be imposed.*" (Translated From Spanish)

63. As concluded from the OSHA investigation of the Subject Incident, PREPA committed the following Willful-Serious violation: "*29 CFR 1926.950(b)(1): Existing conditions shall be determined before starting work, by an inspection or a test. Such conditions shall include but not be limited to energized lines and equipment conditions of poles and the location of circuits and equipment including power and communication lines CATV and fire alarm circuits.*" OSHA Inspection 1008506, CSHO ID U0117, Citation and Notification of Penalty.

64. The aforementioned document, titled *Citation and Notification of Penalty*, clearly concludes that PREPA the pertinent personnel from UITICE brigade willfully omitted the required

inspection. OSHA's investigation also concluded that if such required inspection had been performed, the accident would have been avoided, since "*it was evident at plain sight that the lattice tower was missing two tension cables*." OSHA Inspection 1008506, CSHO ID U0117, Citation and Notification of Penalty. *Evidence attached as Exhibit #A.*

65. For the aforementioned willfully serious violation PREPA was fined $70,000.00. The reason for the large sum of the fine (seven times the quantity established in the Occupational Safety and Health Act) was due to the gravity of the violation and to the fact that PREPA had repeatedly incurred in such intentional misconduct.

66. From OSHA's own reports, provided by the U.S. Department of Labor, through the OSHA IntraNet, it is evident that PREPA has repeatedly incurred in similar violations in the past, and still does. A search of OSHA's inspections of Defendant PREPA presents us with evidence of over one hundred violations, ranging from *Other-Than-Serious* to *Willful*) committed by PREPA since the year 2010 to the present.

67. Prior to the subject incident, PREPA had already been fined with a willful violation of a similar nature on March 15, 2010, OSHA Inspection #311390835, office of Mayaguez, Puerto Rico. Another willful violation was issued against PREPA in the year 2010, as a result of OSHA Inspection #314004599, office of San Juan, Puerto Rico. In January 1, 2011, PREPA was fined for five willful violations, as result of OSHA Inspection #3140009341, office of San Juan, Puerto Rico. Based on PREPA's OSHA record, there is no doubt that PREPA's repeated misconduct is of an intentional nature. *Evidence attached as Exhibit #B.*

68. PREPA's long track history of intentional misconduct only fuels Plaintiffs' contentions in regards to the nature of PREPA's intent, as opposed to gross negligence. As defined by the Supreme Court of Puerto Rico, the main difference between an intentional act and an

instance of gross negligence is the "***intent***" possessed by the employer in the commission of the incident.

69. "*We have resolved that intentional acts of the employer that cause damage to an employee are not compensable under the law [PRWCA].*" Soc. de Gananciales v. Royal Bank de Puerto Rico, supra; Odriozola v. Cosmetic Dist. Corp., supra. "*In this scenario, the possibly illegitimate conduct – and in some contexts the possibly criminal conduct – [of the employer] is not immune from an ordinary torts claim, since such action cannot be reasonably considered an action related to the normal performance of the job.*" (Translated From Spanish) Soc. de Gananciales v. Royal Bank de Puerto Rico, supra.

70. On the other hand, gross negligence does not require intent. According to the legal encyclopedia American Jurisprudence, the concept of "***gross negligence***" is defined as follows: "*Very great negligence or as the want of even slight care, or 'slight diligence.' Gross negligence requires proof of something more than the lack of ordinary care. It implies an extreme departure from ordinary standard of care, 'aggravated' negligence, or negligence substantially and appreciably greater than ordinary negligence.*" 57A Am Jur 2d § 243 (Omitted Citations)

71. The distinction between the two is clear: intentional acts require intent to created a desired effect and gross negligence only entails a degree of negligence higher than that of ordinary negligence. From the facts not in dispute of the case at hand, the factual circumstances surrounding the Subject Incident, OSHA's reported findings, PREPA's conscious decision not to contest OSHA's findings, PREPA's extensive record of similar violations, and the applicable laws pertinent to the employer absolute immunity doctrine, as well as the related

jurisprudence on the issue, it becomes transparent that PREPA's conduct was intentional, not just grossly negligent.

72. PREPA's intentional decision to ignore well-established policies and procedures prevents its unauthorized behavior from being cloaked under mask of employer immunity protection. It is not in dispute that PREPA's behavior was in direct violation of the applicable laws and policies and that its conduct is necessarily worse than the "*grossly negligent*" conduct for which the Defendants' liability is limited by the PRWCA.

73. PREPA did not just disregard well-established federal and local safety protocol; PREPA's conduct goes beyond the realm of "*lack of diligence*," "*complete indifference*," and/or "*total disregard or concern*." By admitting that PREPA knew of the dangerous (life-threatening) situation created by PREPA and intentionally deciding not to perform the required site inspection and consciously sending an employee to perform a job under the intentionally created life-threatening circumstances, PREPA actively participated in occurrence of an accident. PREPA's intentional actions can only be construed as desire to cause an accident. Like it was stated before, PREPA did not desire for one of its employees to perish, but PREPA intentionally create the perfect scenario for the type of accident that inevitably would occur.

74. According to OSHA's Field Inspection Reference Manual and to the results of its investigation of the subject incident, it was concluded that PREPA's conduct constituted a willful violation. In other words, PREPA's conduct was not categorized as negligent, but as **willful**.

75. "*A willful violation exists under the Act where the evidence shows either an intentional violation of the Act or plain indifference to its requirements*." Chapter III-13, Section

C.2.d(1), OSHA Field Inspection Reference Manual. As it was mentioned before, PREPA's conduct goes beyond "*plain indifference*," it constitutes an intentional violation of the Act, as well as the applicable laws.

76. As a direct consequence of PREPA's intentional actions and/or omissions, Hector was ordered to work on an unstable, unsupported, and dangerous structure, which was certain to fall or sway. The Subject Incident occurred solely due to PREPA's willful action of creating and maintaining a dangerous condition, which would cause, as it did in the instant case, death or serious injury at a place where employees performed their duties.

## V. CONCLUSION

77. Defendant PREPA's claim to absolute employer immunity protection, as exemplified by the PRWCA, is not applicable to the case at hand. The present case falls within the judicially accepted exception to the absolute employer immunity doctrine. The Plaintiffs' ample evidence of PREPA's intentional conduct, set out in the previous portions of this document, is sufficient under Federal and Puerto Rico law to defeat absolute immunity.

78. The Plaintiffs actively contend that no Defendant in this case is entitled to the immunity protection provided by the PRWCA. The Plaintiffs assert that substantial evidence has been presented on breach, causation, and the necessary intent. Therefore, at this stage, as a matter of law, the present request for partial summary judgment should be granted by this Honorable Court.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of the present motion.

**CERTIFICATION**: We here certify that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsels.

In San Juan, Puerto Rico, this 14th of April of 2016.

*S/ Jorge Molina-Mencia*
JORGE MOLINA-MENCIA, ESQ.
Attorney's Bar No. 228412
Loiza Street #2153, C-1
San Juan, Puerto Rico 00913-4512
Tel: 787-244-4443
Fax: 787-710-9825
molinamencia@yahoo.com
molinatorolawoffice@yahoo.com

*S/Daniel Pernas-Beceiro*
DANIEL PERNAS-BECEIRO, ESQ.
Attorney's Bar No. 115209
P. O. Box 19392
San Juan, Puerto Rico 00910-1392
Tel: 787-317-4926
Tel./Fax: 787-946-3105
pernasda@yahoo.com
pernasda@gmail.com